**CLOSED**
**CIVIL**
**CASE**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

Case No. 09-14388-CIV-GRAHAM/LYNCH

SUSAN LIESE and JAMES LIESE,

     Plaintiffs,

vs.

INDIAN RIVER MEMORIAL HOSPITAL,
INC.

     Defendants.

_____/

## ORDER

**THIS CAUSE** comes before the Court upon Defendant Indian River Memorial Hospital, Inc.'s Motion for Summary Judgment and Incorporated Memorandum of Law [D.E. 65].

**THE COURT** has considered the Motion, the pertinent portions of the record, and is otherwise fully advised in the premises.

## BACKGROUND

I.    **Facts**

    A.    **Plaintiffs' Disabilities**

Plaintiff Susan Liese is completely deaf in her right ear and has severe hearing loss in her left ear. Although she wears a hearing aid in her left ear, she is still unable to distinguish sounds and noises and cannot understand words. Susan Liese

communicates primarily in American Sign Language ("ASL"),[1] but also has some level of proficiency in lip reading. She reads the English language at a fourth grade level.

Plaintiff James Liese is also deaf. He communicates using a combination of ASL and signed English. Mr. Liese reads at a sixth grade level.

**B.   Defendant's Policy for Communication Barriers**

Defendant Indian River Memorial Hospital ("Defendant") has a policy, titled Communicate Barriers, setting forth the hospital's plan for effectively communicating with patients who have a communication barrier. [D.E. 104-1, pg 16-17]. The Policy includes instructions for patients who are hearing impaired. The Policy details that there is a list of interpreters, including sign language interpreters, on the Hospital's website. It also details the MARTII (My accessible real time trusted interpreter) system. An addendum to the policy answers Frequently Asked Questions about the MARTII system.

On March 28, 2007, over eighty hospital employees attended a MARTII training coordinated by Defendant's education department. [D.E. 104-1]. Laura Gerace, a nurse, Maria Emerson, a nurse, and

---

[1]     "American Sign Language ("ASL"), the most commonly used sign language, by its very nature does not lend itself to word-for-word translation into spoken English. ASL's grammar, syntax and word order differ from English and combine to form an independent language." Tugg v. Towey, 864 F.Supp. 1201, 1205 (S.D. Fla. 1994).

Nathan Sweiggard have all used and/or seen the MARTII system in use.

The hospital also, pursuant to its Communication Barriers Policy, maintains a list of interpreters on its website. Included is Victor Colley, a hospital employee. Although he is not a certified sign language interpreter, he knows ASL and has made himself available for interpreting.

### C.   Events at the Hospital

On November 28, 2007, Susan Liese, accompanied by her husband James Liese, went to Defendant's hospital complaining of chest pain and dizziness. Following her admission and subsequent examination, her treating physician, Dr. Theodore Perry ("Dr. Perry") informed her that she needed gallbladder surgery. Dr. Perry explained the laparoscopic procedure to Mrs. Liese via speaking, writing notes and pointing to his body. Mrs. Liese signed a consent form for the surgery and Dr. Perry performed the operation without incident.

Mrs. Liese now complains that she did not understand the procedure and was not able to make an informed decision as to whether to have the surgery and/or whether she could have waited to have the procedure. Plaintiffs assert that at various times before the surgery Susan Leise, James Leise, Susan's daughter and their pastor all requested an interpreter. Defendant disputes that Plaintiffs made any request. It is undisputed, however, that

3

Defendant made no attempt to obtain an interpreter and did not use the MARTII system for Susan Liese.

## II.  Procedural Background

Plaintiffs filed their Second Amended Complaint on December 30, 2009, asserting claims for damages for 1) a violation of the Rehabilitation Act, 29 U.S.C. §794; 2) lack of informed consent and 3) Negligent Infliction of Emotional Distress.[2]

Defendant moved for summary judgment on all claims.   On November 3, 2010, the Court granted Defendant's Motion for Summary Judgment on the state law claims because Defendant had no duty to Mrs. Liese.   The Court denied summary judgment on rehabilitation act claims finding material issues of fact regarding whether Defendant 1) ensured effective communication with Susan Liese and 2) intentionally discriminated against Susan Liese.   The Court based its findings on intentional discrimination, in part, on a prior settlement between Defendant and another hearing impaired patient (the "Fisher Settlement").

On November 18, 2010, Defendant moved to exclude any reference at trial to the Fisher Settlement.   Upon review of Federal Rule of Evidence 408, the Court found that the Fisher Settlement was not admissible.   In light of this ruling, the Court found it necessary to reconsider all of the admissible record evidence to determine if

---

[2]     Plaintiffs also asserted claims against Dr. Perry and Dr. Jose Ortega, the anesthesiologist, but later voluntarily dismissed those claims.

there were still disputed issues of material fact.  To that end, on November 30, 2010, the Court heard argument of counsel on the issues.

## DISCUSSION

Upon review of the admissible record evidence in this case, the Court has decided to reconsider its prior ruling on Defendant's motion for summary judgment.  Courts are permitted to sua sponte "reconsider and reverse" an interlocutory order "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." See Lavespere v. Niagara Machine & Tool Works, 910 F.2d 167, 185 (5th Cir.1990).

I.    Standard on Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  That burden is discharged if the moving party shows the Court that there is "an absence of evidence to support the nonmoving party's case."  Id. at 325.

5

Once the moving party has discharged its burden, the nonmoving party must designate specific facts showing that there is a genuine issue of material fact.  Id. at 324.  Issues of fact are "genuine" only if a reasonable fact finder considering the evidence presented could find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Material facts are those that will affect the outcome of the trial under the substantive law.  Id. at 248.  In determining whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party.  Id. at 261 n.2.  All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party.  Hayden v. First Natl. Bank of Mt. Pleasant, 595 F.2d 994, 996-97 (5th Cir. 1979).

The court may not weigh the credibility of the parties on summary judgment.  Rollins v. TechSouth, Inc., 833 F.2d 1525, 1531 (11th Cir. 1987).  If the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact.  Id.;  see also McCormick v. FTAIA. Lauderdale, 333 F.3d 1234, 1240 (11th Cir. 2003) ("Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment."); Moorman v. Unumprovident Corp. 464 F.3d 1260, 1267 n.1 (11th 2006) ("Credibility determinations at summary judgment stage are impermissible.")

6

## II.  Rehabilitation Act

### A.    Proving a Claim

Section 504 of the Rehabilitation Act provides "[n]o otherwise qualified individual with a disability in the United States, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. §794(a).  "The standard for determining liability under the Rehabilitation Act is the same as that under the [ADA]; thus, cases involving the ADA are precedent for those involving the [RA]." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005).

To state a claim under the Rehabilitation Act, a plaintiff must prove 1) that he or she was a qualified individual with a disability; 2) that he or she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and 3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." Bircoll v. Miami-Dade County, 480 F.3d 1072, 1083 (11th Cir. 2007).[3]  The parties do not dispute that Plaintiffs were

---

[3]    The only distinguishing element between an ADA and an RA claim is that for a plaintiff to prevail under an RA claim, she must prove that the entity received Federal financial assistance. Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001).  It is undisputed that Defendant receives Federal financial assistance.

7

qualified individuals with disabilities.  However, they disagree as
to the second and third elements of the claim.

In its prior order on summary judgment, the Court determined
there were disputed material issues of fact as to whether Defendant
furnished appropriate auxiliary aids to ensure effective
communication with Plaintiffs.  The Court notes that this was a
close call.  There is record evidence, including Mrs. Liese's own
deposition, that she understood Dr. Perry.  However, at this stage
of the litigation, there is some dispute regarding whether Susan
Liese understood the need for and specifics of her gallbladder
surgery.  Accordingly, the Court will not change its ruling on this
issue.

**B.   Monetary Damages**

Plaintiffs' Rehabilitation Act claim is for monetary damages.[4]
Accordingly, even if Plaintiffs can establish all of the elements
of a Rehabilitation Act claim at trial, to obtain compensatory
damages, they must also establish intentional discrimination.
Saltzman v. Board of Commissioners of the North Broward Hospital
Dist., 239 Fed.Appx. 484, 487 (11th Cir. 2007)("In this Circuit,
compensatory damages are recoverable only upon a showing of
intentional discrimination.")  The Eleventh Circuit has "not
determined whether 'intentional discrimination' should be evaluated

---

[4]    Plaintiffs' counsel informed the Court at the hearing that
Plaintiffs do not have standing to bring a claim for injunctive
relief.

under the 'deliberate indifference' standard, or under a more stringent standard, such as 'discriminatory animus,'" Id. However, several Circuits have adopted the deliberate indifference standard. See, e.g., Duvall v. County of Kitsap, 260 F.3d 1124, 1138-39 (9th Cir.2001) (adopting the "deliberate indifference" standard over the "discriminatory animus" standard); Bartlett v. New York State Bd. of Law Exam'rs, 156 F.3d 321, 331 (2d Cir.1998)(using deliberate indifference standard), rev'd on other grounds by, 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999); Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10th Cir. 1999)(same).

Upon a review of the case law in this and other circuits, the Court finds that the proper standard is deliberate indifference. The Supreme Court has established that money damages are available under Title IX if a plaintiff can establish the defendant's "deliberate indifference to discrimination." Gebser v. Lago Vista Indep. School Dist., 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). Title IX was modeled after Title VI of the Civil Rights Act of 1964. Id. at 286, 118 S.Ct. 1989. The remedial reach of § 504 is defined, directly or indirectly, by reference to Title VI. See Shelly v. MRI Radiology Network, P.A., 505 F.3d 1173, 1190 (11th Cir. 2007). Given the close connection between Title IX and Title VI, the Court believes that the Supreme Court would require deliberate indifference as a condition of recovering money damages under Title VI, as it did under Title IX in Gebser.

9

See <u>DT v. Somers Centeral School District</u>, 348 Fed. Appx. 697, 699 (2d Cir. 2009)(applying deliberate indifference standard to Title VI claim).  Accordingly, the Court finds deliberate indifference is also sufficient to recover compensatory damages under the Rehabilitation Act.

### 1.    Deliberate Indifference

"[F]or conduct to be deliberately indifferent, there must be both knowledge of likely harm and failure to act on the part of a policymaker, that is, someone capable of making an 'official decision' on behalf of the organization." <u>Saltzman</u>, 239 Fed.Appx. at 487; <u>Powers</u>, 184 F.3d at 1153("[I]ntentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights.") <u>Bartlett</u>, 156 F.3d at 331 ("In the context of the Rehabilitation Act, intentional discrimination against the disabled does not require personal animosity or ill will. Rather, intentional discrimination may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy ... or custom.") (citations, brackets, and quotation marks omitted), rev'd on other grounds by, 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999).

"Negligence, even if gross, cannot constitute deliberate indifference." Saltzman, 239 Fed.Appx. at 487.

In the context of §1983 cases, which also apply the deliberate indifference standard, Courts have expounded upon the requirement that the state of mind goes well beyond negligence. "Deliberate indifference is a state of mind more egregious and culpable than mere negligence. . . In fact, even gross negligence does not satisfy the requisite state of mind." Despart v. Kearney, 2006 WL 2789007 (M.D. Fla. 2006). See also, Hendrichsen v. Ball State University, 2003 WL 1145474 (S.D. Ind. 2003)("Negligence, even gross negligence, does not rise to a level of deliberate indifference; a defendant's conduct must approach criminal recklessness.")

### 2. Evidence

The Court must review the record evidence to determine whether Defendant acted with deliberate indifference.

### a. Fisher Settlement

The Court has previously determined that the Fisher Settlement Agreement is not admissible to establish deliberate indifference. After hearing argument of counsel, the Court stands by its position on this issue.

Federal Rule of Evidence 408 prohibits the admission of a compromise or settlement "when offered to prove liability for" a claim. The Court finds that Plaintiff cannot use the settlement

11

under Federal Rule of Evidence 408 because it would be used to prove Defendant's liability under the Rehabilitation Act.

Plaintiffs contend that the settlement will be used to show notice and not establish liability. The Court disagrees. In this matter, notice is required to show deliberate indifference and deliberate indifference is required to establish liability. Accordingly, notice is too intertwined with liability for the Fisher Settlement to be admissible. See Power Authority of the State of New York v. United States, 62 Fed. Cl. 376 (Fed.Cl. 2004)("Since the two questions were so closely intertwined, admission of the documents . . . would . . . militate against the public policy considerations which favor settlement negotiations and which underlie Rule 408"); W.E. Green v. Baca, 226 F.R.D. 624 (C.D. CA 2005)("to the extent plaintiff seeks to introduce the amount of the settlements, or the manner in which they were negotiated, to prove defendant's deliberate indifference, he is offering the evidence to prove liability.")

Plaintiffs also assert that even if the Fisher Settlement is not admissible, the Fisher *suit* should be admissible to show that Defendant was on notice of its obligations under the Rehabilitation Act. Defendant, however, does not dispute that it has obligations under the Rehabilitation Act. Indeed, Defendant has a formal policy to address its obligations under the Act. Accordingly, this argument is without merit.

12

### b.    Remaining Record Evidence

Without the settlement, the question thus becomes what evidence is there to establish that the Hospital acted with deliberate indifference.   The Court finds that the record establishes the opposite.   The Defendant had an established policy which detailed the mechanism to provide assistance to those patients who might have a communication barrier.   Its policy included interpreters and the MARTII system.   Defendant provided training on MARTII and provided additional information about the system and interpreters on its website.   In addition, employees testified that they had used MARTII and/or seen it used to communicate with patients.

Plaintiffs contend that Defendant's policy and its implementation of that policy is not enough.   Plaintiffs assert that if a hearing impaired individual enters a hospital and asks for an interpreter and isn't provided one, there is intentional discrimination.   Plaintiffs misstate the law.   Although in certain circumstances an unanswered request for an interpreter might be a violation of the Rehabilitation Act, this does not necessarily establish intentional discrimination.   If it did, there would be no need for the extra step of establishing deliberate indifference to obtain monetary damages.   Every violation of the Rehabilitation Act would create a cause of action for monetary damages.   This simply is not the law.   See O'Connor v. The College of Saint Rose, 2005 WL

13

2739106 (N.D.N.Y. 2005)("Simply because something has happened to a person with disabilities does not, standing alone, permit the conclusion that the person was treated differently because of those disabilities . . . . There must be some evidence, direct or circumstantial, tending to suggest that discrimination was a factor in Defendant's actions.").

Defendant had an adequate policy in place and the record reflects that employees had training. If Susan Liese truly needed an interpreter to understand her surgery, then Defendant likely violated the Rehabilitation Act. Defendant would also likely be negligent when it failed to obtain an interpreter or use the MARTII system. This negligence, however, simply is not enough to establish intentional discrimination. Accordingly, the Court shall vacate its prior ruling on Summary Judgment and will grant summary judgment in favor of the Defendant on Count I.

## III. Informed Consent (Count II) and Negligent Infliction of Emotional Distress (Count III)

Susan Liese also pled claims for lack of informed consent and negligent infliction of emotional distress. Both claims were predicated on Mrs. Liese's allegations that she did not fully understand the gallbladder procedure and that, as a result, she has suffered emotional distress.

It is well established that a hospital has no duty to obtain a patient's informed consent to surgical procedures. See <u>Cedars Medical Center, Inc. v. Ravelo</u>, 738 So.2d 362 ("it is the duty of

14

the physician, not the hospital, to obtain a patient's informed consent")(citing <u>Valcin v. Pub. Health Trust of Dade County</u>, 473 So.2d 1297 (Fla. 3d DCA 1984). Although Mrs. Liese attempts to argue that her claims are for a complete want of consent, as opposed to a lack of informed consent, the record indicates otherwise. Indeed, Susan Liese's entire argument is that she did not completely understand the procedure, not that she underwent a procedure to which she did not consent at all. Therefore, because the hospital had no duty to obtain Susan Liese's informed consent, both her claim for lack of informed consent and negligent infliction of emotional distress fail. Accordingly, the Court's prior ruling on Counts II and III remains the same.

## CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the Court's November 3, 2010 Order [D.E. 88] is **VACATED**. It is further

**ORDERED AND ADJUDGED** that Defendant Indian River Memorial Hospital, Inc.'s Motion for Summary Judgment and Incorporated Memorandum of Law [D.E. 65] is **GRANTED**. It is further

**ORDERED AND ADJUDGED** that Summary Judgment is **GRANTED** in favor of Defendant on Counts I, II and III of the Second Amended Complaint. It is further

**ORDERED AND ADJUDGED** that this case is **CLOSED** and all pending motions are **DENIED as MOOT**. It is further

**ORDERED AND ADJUDGED** that the December 1, 2010 Calendar Call is cancelled.

**DONE AND ORDERED** in Chambers at Miami, Florida, this /st day of December, 2010.

_____
DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc:  Counsel of Record

16